## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS-EASTERN DISVISION

| | | |
|---|---|---|
| Jeffrey Davis, Randall Noble, | ) | |
| Jessie Randolph, and Donald Washington, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. |
| | ) | |
| Metroplex, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COME THE PLAINTIFFS JEFFREY DAVIS, RANDALL NOBLE,

JESSIE RANDOLPH, AND DONALD WASHINGTON by and through their attorneys,

THE LAW OFFICE OF JEFFREY FRIEDMAN, P.C. and seek redress for the racial

discrimination suffered by all of the Plaintiffs in violation of the laws of the United States

and in support thereof allege upon information and belief as follows[1]:

### Jurisdiction and Venue

1.      Jurisdiction of this court is invoked and authorized pursuant to Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, as amended in the

Civil Rights Act of 1991, (referred to herein as "Title VII"), and § 1981 of the 1871 Civil

Rights Act, 42 U.S.C. § 1981 (referred to herein as "§ 1981").

2.      Venue is proper in the Northern District of Illinois because the actions

complained of occurred in this District.

---

[1] Please be advised that this Complaint contains highly offensive, racially-based and other graphic
language.  It has not been redacted to allow the reader to clearly understand the allegations made herein.

3.      Plaintiffs each have filed a timely "Charge of Discrimination" with the

Equal Employment Opportunity Commission (referred to herein as the "EEOC")

charging race discrimination.[2]

4.      Pursuant to Rule 38 of the Federal Rules of Civil Procedure the Plaintiffs

hereby demand a trial by jury.

### Parties

5.      Plaintiff Jeffrey Davis is a 64 year old African American citizen of the

State of Illinois.  Davis began his employment at Metroplex, Inc. (referred to herein as

"Metroplex") on August 27, 1999 as security guard, earning $17.00 per hour.  His

employment was terminated on October 20, 2008.

6.      Plaintiff Randall Noble is a 50 year old African American citizen of the

State of Illinois.  Noble was employed at Metroplex as a security officer, earning $14.00

per hour beginning in September 1998.  His employment was terminated on August 3,

2008.

7.      Plaintiff Jessie Randolph is a 40 year old African American citizen of the

State of Illinois.  Randolph was employed at Metroplex as a security officer, earning

$14.42 per hour beginning in June 2008.  On June 21, 2009 Metroplex terminated his

employment.

8.      Plaintiff Donald Washington is a 59 year old African American citizen of

the State of Illinois.  Washington was employed as a security officer at Metroplex

---

[2] All four plaintiffs filed charges of discrimination with the EEOC. These charges are the outline of
plaintiffs' case that contains basic facts that would support a charge of discrimination. As the Seventh
Circuit set forth in *Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407, 411-412 (7th Cir. 1984): "The
purpose of a charge is only to initiate the EEOC investigation, not to state sufficient facts to make out a
*prima facie* case. *Graniteville Co. v. EEOC*, 438 F.2d 32, 38 (4th Cir. 1971). As the Supreme Court noted
recently, a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit.
The function of a Title VII charge, rather, is to place the EEOC on notice that someone believes that an
employer had violated the title. *EEOC v. Shell Oil*, 104 S. Ct. 1621, 1630 (1984)."

beginning in October 2003. He earned $14.00 per hour. He went on sick leave on February 28, 2008, and was unable to work until March 2009. In March 2009, Washington was cleared to return to work, and intended to return to work. The Defendant failed to schedule Washington for any work. As a result, he was terminated in March 2009.

9.    All Plaintiffs are African Americans, which is a protected class under Title VII.

10.   Metroplex is an "employer" in the State of Illinois, within the State of Illinois, within the meaning of Title VII, and is qualified to do and actually does business in the State of Illinois.

11.   Defendant Metroplex is a large property management company located in Chicago, Illinois.

12.   Metroplex is the property management company for Marshall Field Garden Apartment Homes ("MFGAH"), located at 1448-1450 N Sedgwick St Chicago, Illinois 60610.

13.   MFGAH is a large non-governmental subsidized housing project which occupies two square city blocks. The project was the largest moderate-income housing development in the country at the time of construction in 1929.

14.   MFGAH has 628 units within 10 buildings.

15.   The discrimination complained of herein took place at MFGAH.

16.   At all relevant times hereto, Darlene Sand ("Sand"), a Caucasian female, was the Property Manager for MFGAH.

17.    At all times relevant hereto, Sand supervised the Plaintiffs and possessed authority over them with regard to employment matters.

18.    At all relevant times hereto, Diana Woznicki ("Woznicki"), a Caucasian female, was the Director of Security for MFGAH.

19.    Woznicki was hired as Director of Security for Metroplex on April 21, 2008.

20.    At all relevant times hereto, Woznicki also possessed supervisory authority over the Plaintiffs also.

### Background Facts and General Pattern of Discrimination

21.    Plaintiffs experienced numerous acts of racial discrimination during their employment at Metroplex.  These acts of racial discrimination were indicia of the pervasive pattern of racial discrimination that exists at the MFGAH.

22.    On a daily basis African American employees at Metroplex, including without limitation the Plaintiffs, were subjected to highly offensive racial comments made by Sand and Woznicki.

23.    Sand used the words "nigger," "fuckin' nigger," and "mother fucking niggers" towards African American employees, including without limitation, the Plaintiffs, on a frequent and regular basis.

24.    Woznicki used the words "nigger," "fuckin' nigger," and "mother fucking niggers" towards African American employees, including without limitation, the Plaintiffs on a frequent and regular basis.

4

25.     The Plaintiffs were further exposed on a regular and frequent basis to racially demeaning and derogatory comments, including without limitation the aforementioned words, in such phrases as "we need to fire these niggers," "mother fucking niggers," and repeated references to African Americans as "niggers."

26.     Sand made racial statements in front of plaintiffs, including but not limited to calling tenant Eliza Truss a "black bitch," and tenant Jennette Frilly a "ghetto nigger," and other references to tenants and employees using the word "nigger."

27.     Woznicki made racial statements in front of plaintiffs, including but not limited to calling tenant Eliza Truss a "black bitch," and tenant Jennette Frilly a "ghetto nigger," and other references to tenants and employees using the word "nigger."

28.     Plaintiffs allege that other residents and employees of MFGAH were also subject to Sand's and Woznicki's offensive conduct and language, including resident Eliza Russ and former Director of Security at MFGAH, Robert Thorne.

29.     On information and belief, Robert Thorne, the director of security of Metroplex prior to the employment of Woznicki, resigned his position as Director of Security at MFGAH due to the hostile work environment created by Sand, including, without limitation, the racially offensive language she routinely used.

### *Metroplex Terminated Plaintiffs*

30.     Plaintiff Davis was terminated from his employment on October 20, 2008.

31.     Metroplex terminated Davis because of his race.

32.     On October 20, 2008, Davis was terminated by Sand at the urging of Woznicki. Davis alleges that there was a plan by Woznicki and Sand to terminate him

once he trained Woznicki after she was hired on April 21, 2008.  Woznicki made statements to Chicago Police Officer Rosemarie Skarkion that after she was trained by Davis that, "that old black bastard will be fired by me and Darlene."  Furthermore, Davis alleges that both Sand and Woznicki told other employees that Davis was going to be fired because he was a "smart ass old black nigger."

33.     Davis had consistently met all reasonable job performance expectations as a security officer.  Prior to his termination, Davis was informed on September 2, 2008 that he would no longer work his normal hours 8:30 am to 5:00 pm, but he was demoted to working 6:00 pm to 1:00 am Monday, Wednesday, and Friday and 8:30 am to 5:00 pm on Tuesday and Thursday.  Then Metroplex terminated his employment on October 20, 2008.

34.     Plaintiff Noble was terminated from his employment on August 3, 2008.

35.     Metroplex terminated Noble because of his race.  Noble had consistently met all reasonable job performance expectations in his position as a security officer. Metroplex terminated his employment on August 3, 2008.

36.     Plaintiff Randolph was terminated from his employment on June 21, 2009.

37.     Metroplex terminated Randolph because of his race.  Randolph had consistently met all reasonable job performance expectations in his position as security officer.  He was exposed to racially demeaning and derogatory comments, including but not limited to the N-word, in phrases such as the "niggers are in a ruckus."  Metroplex then terminated his employment on June 21, 2009.

38.     Metroplex terminated Plaintiff Washington in March 2009 by failing to schedule him for work upon his return from sick leave.  When Washington left for sick

6

leave, he was told his job would be "waiting for him" as soon as he was able to return to work. However, when he was fully recovered from surgery and able to return to work, he was told that he was terminated.

39.     Metroplex terminated Washington because of his race. Washington consistently met all reasonable job performance expectations in his position as a security officer. Washington, along with other African Americans, was subjected to a racially hostile work environment. He and other African American employees were referred to as "niggers," and "mother fucking niggers." He was denied other employment and job benefits, such as having his vehicle repaired after it was damaged in the course of employment, while those in the non-protected class were provided such benefits. In March 2009, he returned to work after being on sick leave and Metroplex failed to schedule him for any work at this time, at which time he was informed of his termination.

40.     All plaintiffs who were terminated met all reasonable expectations of job performance and were terminated on grounds that were not legitimate.

## COUNT I

### *TITLE VII RACIALLY HOSTILE WORK ENVIRONMENT AT METROPLEX*

41.     Plaintiffs repeat and re-allege Paragraphs 1 through 40, as if fully stated herein.

42.     Title VII prohibits harassment on the basis of race, which includes prohibitions of ethnic slurs, racial "jokes," offensive or derogatory comments, or other verbal or physical conduct based on an individual's race.

43.    Title VII prohibits race based language and other conduct that creates an intimidating, hostile, or offensive working environment, or interferes with the individual's work performance.

44.    Title VII provides that it is an unlawful employment practice for an employer to discriminate against an individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such an individual's race.  42 U.S.C. 2000e-2(a)(1).

45.    Metroplex, by and through Sand and Woznicki, engaged in racially discriminatory conduct and action that created a hostile work environment for the Plaintiffs and African Americans in general.

46.    By engaging in a pattern of racial discrimination towards the Plaintiffs and other African Americans, Metroplex demonstrated that it condoned, fostered, promoted and did not discourage or prohibit racial discrimination towards the Plaintiffs and African Americans in general.

47.    The violation of the Plaintiffs' civil rights by Metroplex has caused the Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs respectfully request a judgment against Metroplex as follows:

A.    Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of Metroplex's actions that created a hostile work environment to the Plaintiffs;

B.    Compensatory damages for back pay, front pay, economic and employee benefits and interest thereon

C.      Punitive Damages;

D.      Reasonable attorney's fees and costs; and

E.      Such further relief as is equitable and just.

## COUNT II

### *RACIAL DISCRIMINATION IN VIOLATION OF § 1981 AT METROPLEX*

48.      Plaintiffs repeat and re-allege Paragraphs 1 through 40, as if fully stated herein.

49.      Section 1981, as amended, of the Civil Rights Act of 1991 prohibits intentional discrimination on the basis of race in employment, including the terms and conditions of employment as well as hiring and firing decisions.  42 U.S.C. § 1981.

50.      Metroplex has perpetrated various acts of racial discrimination including using racially motivated derogatory language and creating a work environment that was hostile to the Plaintiffs and African Americans in violation of §1981.

51.      The violation of the Plaintiffs' civil rights by Metroplex has caused the Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs respectfully request a judgment against Metroplex as follows:

A.      Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of Metroplex's racial discrimination;

B.      Compensatory damages for back pay, front pay, economic and employee benefits and interest thereon

C.      Punitive Damages;

D.      Reasonable attorney's fees and costs; and

E.      Such further relief as is equitable and just.

### COUNT III

### *TITLE VII RACE DISCRIMINATION:*
### *WRONGFUL TERMINATION*

52.     Plaintiffs repeat and re-allege Paragraphs 1 trough 40 as if fully stated herein.

53.     Each of the Plaintiffs were terminated based on their race.  Throughout their employment, Plaintiffs were subjected to incidents of racially offensive language, including the word, "nigger," in reference to themselves as well as other African Americans.  Plaintiff Davis alleges that both Sand and Woznicki told other employees that Davis was going to be fired because he was a "smart ass old black nigger."  Noble, Randolph and Washington were also subjected to racially offensive language, including, "niggers are in a ruckus," "mother fucking niggers," and "black bitches."

54.     This racially offensive language was regularly directed at the Plaintiffs including without limitation at times contemporaneously with their terminations.

55.     At and at times prior to their respective terminations, Plaintiffs were subjected to derogatory and offensive racially motivated remarks and comments coupled with an adverse employment action.

56.     The Plaintiffs have each suffered economic and other damages as a result of being terminated from their respective employment by Metroplex.

WHEREFORE, Plaintiffs respectfully request a judgment against Metroplex as follows:

A. Compensatory damages for back pay, front pay, economic and employee benefits and interest thereon;

B. Compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of Best Western's wrongful terminations and constructive discharge of these aforementioned Plaintiffs;

C. Punitive Damages;

D. Reasonable attorney's fees and costs; and

E. Such further relief as is equitable and just.

Respectfully Submitted,

LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorney for Plaintiffs
120 S. State Street, Suite 400
Chicago, Illinois  60603
(312) 357-1431

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
JEFFREY DAVIS

Dated:

LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorneys for Plaintiffs
120 S. State Street, Suite 400
Chicago, Illinois 60603
(312) 357-1431

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

X _Randall a. Noble_

RANDALL NOBLE

Dated:

LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorneys for Plaintiffs
120 S. State Street, Suite 400
Chicago, Illinois 60603
(312) 357-1431

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
JESSIE RANDOLPH

Dated:

LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorneys for Plaintiffs
120 S. State Street, Suite 400
Chicago, Illinois 60603
(312) 357-1431

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

DONALD WASHINGTON

Dated:

LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorneys for Plaintiffs
120 S. State Street, Suite 400
Chicago, Illinois 60603
(312) 357-1431